UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STATE FARM FIRE AND CASUALTY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>WHITELY COMMUNITY COUNCIL, INC.<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:20-cv-775<br>)<br>)<br>)<br>) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, State Farm Fire and Casualty Company ("State Farm"), by counsel, for its Complaint for Declaratory Judgment against Defendant, Whitely Community Council, Inc. ("Whitely"), states:

## I. INTRODUCTION AND THE PARTIES

1. This is an action for declaratory judgment, under 28 U.S.C. § 2201, to determine the rights and duties of State Farm and Whitely under two insurance policies with respect to liability coverage for environmental contamination.

2. State Farm is a citizen of Illinois because it is a company incorporated under the laws of Illinois, and it has its principal place of business in Illinois.

3. Whitely is a citizen of Indiana because it is a non-profit company organized under the laws of Indiana, and it has its principal place of business in Indiana.

## II. JURISDICTION

4. This Court has original jurisdiction over this case under 28 U.S.C. § 1332(a)(1), because State Farm and Whitely are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

## III. VENUE

5. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claim occurred in this judicial district and a substantial part of the property that is the subject of this claim was situated in this judicial district.

## IV. FACTUAL ALLEGATIONS

### A. The First Policy

6. For a time, including January 12, 2016, to January 12, 2018, State Farm issued a businessowners policy to Whitely under policy number xx-xx-x810-7 (the "First Policy").

7. The First Policy is attached as Exhibit A.

8. The First Policy provides, in relevant part:

**SECTION II – LIABILITY**

**Coverage L – Business Liability**

**1.** When a Limit of Insurance is shown in the Declarations for **Coverage L – Business Liability**, we will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured by counsel of our choice against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury", to which this insurance does not apply…

***

**2.** This Insurance applies:

a. To "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes places in the "coverage territory";
(2) The "bodily injury" or "property damage" occurs during the policy period; and
(3) Prior to the policy period, no insured listed under Paragraph **1.a.** of **SECTION II – WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage"

occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period.

***

(Ex. A, CMP-4100, p. 23).

**4.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of **SECTION II – WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

***

**c.** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

(Ex. A, CMP-4100, p. 23).

**SECTION II – EXCLUSIONS**

Applicable to **Coverage L – Business Liability,** this insurance does not apply to:

***

**7. Pollution**

**a.** "Bodily injury" or "property damage" arising out of the actual, alleged or threated discharge, dispersal, seepage, migration, spill, release or escape of "pollutants":

**(1)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to…

***

**(2)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

***

**b.** Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement or such claim or suit by or on behalf of a governmental authority.

(Ex A., CMP-4100, pp. 25-26).

**12. Damage To Property**

"Property damage" to:

a. Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(Ex. A, CMP-4100, p. 27).

**CMP-4214.1 AMENDMENT ENDORSEMENT (Indiana)**

*****

**14.** "pollutant" means any solid, liquid, gaseous, or thermal substance or material that can:

**a.** Become toxic or hazardous;
**b.** Cause irritation to animals or persons; or
**c.** Cause contamination to property or the environment.

including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste. Specific examples identifies as "pollutants" include, but are not limited to diesel, kerosene, paraffin oil, ethanol, biodiesel, heating oil, gasoline, butane, propane, natural gas, brake fluid, transmission fluid, ethylene glycol, methyl ethylene glycol, methanol, isopropyl alcohol, phosphate ester, benzene, toluene, t-butyl alcohol, methyl tertbutyl ether (MTBE), propylene glycol, grease, tar, petroleum distillates, carbon monoxide, Stoddard solvent, mineral spirits, turpentine, acetone, chromium compounds, emulsions/emulsifiers, naphtha, tetrachloroethylene, perchloroethylene (PERC), trichloroethylene (TCE), methylene chloroforms, n-propyl bromide (nPB), methyl isobutyl ketone (MIBK), methyl ethyl ketone (MEK), n-butyl acetate, 2-butoxyethanal, hexylene glycol, peroxides, freon, polychlorinated biphenyl (PCB), chlorofluorocarbons (such as CFC-113), chlorinated hydrocarbons, adhesives, barium, 1,2-Dichloroethylene, ethylene dichloride, dichloroethyl ester, dichloromethane, methylene chloride, ethylbenzene, lead, mercury, formaldehyde, ammonia, dioxane, chloroform, selenium, sulfate, diazinon, dichlorodiphenyl-trichloroethane (DDT), carbaryl, dicamba,

dichlorophenoxyacetic acid (2,4-D), atrazine, methyl bromide, xylene, silica, asbestos, animal excrement, and manure. This includes:

**(1)** All other fuel oils, fuels, biofuels, hydraulic fluids, antifreeze additives, petroleum solvents, exhaust gases, solvents, dry cleaning chemicals, fertilizers, pesticides (fungicides, herbicides, and insecticides), and industrial waste materials; and

**(2)** Any substance or material specifically listed, identified, or described by one or more of the following references:

**(a)** Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) Priority List Hazardous Substances (1997 and all subsequent editions);

**(b)** Agency for Toxic Substances and Disease Registry ToxFAQs™;

**(c)** U.S. Environmental Protection Agency EMCI Chemical References Complete Index; or

**(d)** U.S. Occupational Safety and Health Administration List of Hazardous Substance Chemicals.

Substances or materials identified as examples above or by the referenced lists also include substances or materials to be discarded, recycled, reconditioned or reclaimed.

The definition of "pollutants" applies whether or not such substances or materials identified above as examples or by the referenced lists have any integral or incidental function in your business, operations, premises, site or location.

(Ex. A, CMP-4214.1, pp. 2-3 of 4).

**B. The Contaminated Property**

9. In 2017, Whitely hired Alt & Witzig Engineering, Inc. ("Witzig") to complete a Phase I Environmental Assessment of the real property at 1208 East Centennial Avenue, Muncie, Indiana (the "Property").

10. In its Phase I Environmental Assessment Report dated June 2, 2017, Witzig states, in part, that "additional investigation in the form of subsurface sample is warranted."

11. Later, in 2017, Whitely hired HydroTech Corporation to conduct a Phase II Environmental Assessment of the Property.

12. In its Phase II Limited Subsurface Investigation Report dated October 25, 2017 ("Phase II Report"), HydroTech states, in part, that "contaminations associated with historical industrial operations are present in the subsurface" of the Property. The Phase II Report, excluding its Tables, Figures, and Appendices, is attached as Exhibit B.

13. In its Phase II Report, HydroTech states, in part:

- "The metals arsenic, chromium and lead were reported at concentrations which exceeded their current respective IDEM RCG Residential Tap (RT) Groundwater Screening Levels (VWSLs) in groundwater samples."

- "Of particular concern, however, was the detection of chromium at an elevated concentration in the groundwater sample collected at boring B-4, located within the area of the site building which was the apparent location of historical metal plating operations."

- The VOC tetrachloroethene (PCE) was reported at a concentration which exceeded the current IDEM RCG Residential Soil MTGSL but was below the Residential DCSL in the soil sample collected from interior boring B-4, located within the area of the site building which was the apparent location of historic metal plating operations. PCE was also detected in the grab groundwater sample collected at this location. PCE is a chlorinated solvent which was historically used in degreasing metals."

(Ex. B, p. 12 (p. 10 of Report)).

**C. Whitely Buys The Contaminated Property and Insures It With State Farm.**

14. On December 22, 2017, Whitely signed a contract to buy the Property.

15. On that same day, December 22, 2017, Whitely applied for an insurance policy with State Farm to insure the Property.

16. On January 3, 2018, State Farm issued a second businessowners policy to Whitely under policy number xx-xx-x003-1 (the "Second Policy"), providing coverage from January 3, 2018, to January 3, 2019, and identifying the Property as an insured location. The Second Policy is attached as Exhibit C.

17. Like the First Policy, the Second Policy contains the terms and provisions quoted in paragraph 8.

18. Whitely closed on its purchase of the Property on January 9, 2018.

**D. Whitely Reports Its Contaminated Property to IDEM And Then Demands Insurance Coverage From State Farm For "An Impending Claim" By IDEM.**

19. On August 22, 2018, Whitely sent a letter to the Indiana Department of Environmental Management ("IDEM"), informing it of "an apparent spill" of hexavalent chromium and trivalent chromium" at the Property. In its letter, Whitely stated, in part, that the spill was "historical in nature, likely occurring many years ago." The letter is attached as Exhibit D.

20. On that same day, August 22, 2018, Whitely sent a letter to State Farm, informing State Farm of "an impending claim" by IDEM because of contamination at the Property and demanding that State Farm provide coverage under the First Policy. The letter is attached as Exhibit E.

21. On October 8, 2018, State Farm reserved its right to deny coverage to Whitely under the First Policy and the Second Policy (collectively, the "Policies") because it was questionable whether there had been an "occurrence"; whether the contamination happened during the policy periods; whether the "Pollution" exclusion barred coverage for the contamination; and whether the "known loss doctrine" barred coverage for the contamination. State Farm's Reservation of Rights letters dated October 8, 2018, are attached as Exhibit F (First Policy) and Exhibit G (Second Policy).

**E. State Farm Reserves Its Right To Deny Coverage For Whitely in the IDEM Action.**

22. On December 21, 2018, IDEM sent a Request for Information to Whitely. The request is attached as Exhibit H.

23. In the Request for Information, IDEM stated, in part, that it was "requesting [Whitely] to furnish information relating to the past or present use of hexavalent and trivalent chromium or products containing chromium at the Property, whether the use is or was by [Whitely] or by prior owners or operators at the Property of which [Whitely] may have knowledge."

24. The specific information that IDEM requested from Whitely was listed in Exhibit A to the Request for Information.

25. On February 12, 2019, State Farm agreed to defend Whitely, with counsel of Whitely's choosing, in the IDEM Action under a complete reservation of its rights under the Policies, including its right to deny coverage because it was questionable whether the Insuring Agreement in the Policies had been triggered; whether there had been an "occurrence"; whether the contamination happened during the policy periods and was unknown before the policy periods; and whether the "Pollution" exclusion barred coverage for the contamination. State Farm's Reservation of Rights letters dated February 12, 2019, are attached as Exhibit I (First Policy) and Exhibit J (Second Policy).

26. On information and belief, the cost of defending and indemnifying Whitely in the IDEM Action exceeds $75,000, exclusive of interest and costs.

## V. DECLARATORY JUDGMENT

27. State Farm repeats the allegations in paragraphs 1 through 26.

28. The "known loss doctrine" bars Whitely from obtaining coverage under the Policies for the IDEM Action because Whitely bought the Property knowing it was contaminated.

29. The "known loss doctrine" bars Whitely from obtaining coverage in the IDEM Action under the Second Policy because Whitely knew before obtaining the Second Policy that the Property was contaminated.

30. The IDEM Action does not trigger the Insuring Agreement in the Policies because Whitely knew about the "property damage" to the Property before the policy period.

31. The Policies provide no liability coverage to Whitely in the IDEM Action for "property damage" that was not caused by an "occurrence."

32. The "Damage To Property" exclusion in the Policies bars liability coverage to Whitely in the IDEM Action for "property damage" to property that Whitely owns, rents, or occupies.

33. The "Pollution" exclusion in the Policies bar liability coverage for Whitely in the IDEM Action.

34. Because the IDEM Action is not covered under the Policies, State Farm is not obligated to provide Whitely with a defense in the IDEM Action, nor is State Farm obligated to indemnify Whitely for any expenses, judgments, or costs in the IDEM Action.

WHEREFORE, State Farm, by counsel, asks this Court to enter a declaratory judgment against Whitely, declaring the rights and duties of State Farm and Whitely as follows:

a. The IDEM Action does not trigger a coverage obligation under the Policies.

b. The Policies provide no coverage to Whitely in the IDEM Action for "property damage" that was not caused by an "occurrence."

c. The Policies provide no coverage to Whitely in the IDEM Action for "property damage" that did not occur during the policy period.

d. The "known loss doctrine" bars coverage under the Policies for Whitely in the IDEM Action.

    e. The “Damage To Property” exclusion in the Policies bars coverage for Whitely in the IDEM Action.

f. The “Pollution” exclusion in the Policies bars coverage for Whitely in the IDEM Action.

g. Because the Policies provide Whitely with no coverage for the IDEM Action, State Farm is not obligated to defend Whitely against the IDEM Action, nor is State Farm obligated to indemnify Whitely for any expenses, judgments, or costs in the IDEM Action.

Respectfully submitted,

LEWIS WAGNER, LLP

By: /s/ *Michael R. Giordano*
Kyle A. Lansberry, #20977-49
Michael R. Giordano, #31317-53
*Counsel for Plaintiff, State Farm Fire and Casualty Company*

501 Indiana Avenue, Suite 200
Indianapolis, IN 46202-3199
Phone: (317) 237-0500
Fax: (317) 630-2790
Email: klansberry@lewiswagner.com; mgiordano@lewiswagner.com